IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PROFIT POINT TAX TECHNOLOGIES, INC., | Misc. Action No. 3:20-mc-00009 |
| Plaintiff/Counter-Defendant, | Pending in the United States District Court for the Western District of Pennsylvania |
| v. | Case No. 2:19-cv-00698-WSS-MPK |
| DPAD GROUP, LLP, JOHN MANNING and DANIEL STEELE, | |
| Defendants/Counter-Plaintiffs. | |

**DEFENDANTS/COUNTER-PLAINTIFFS DPAD GROUP, LLP, JOHN MANNING AND DANIEL STEELE'S BRIEF IN OPPOSITION TO MOTION TO QUASH**

**REED SMITH LLP**

Alex G. Mahfood
State Bar No. 1089130
Brad A. Funari
(*pro hac vice* forthcoming)
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131

*Counsel for Defendants*
*DPAD Group, LLP, John Manning,*
*and Daniel Steele*

**INTRODUCTION**

Defendants DPAD Group LLP ("DPAD"), John Manning ("Manning") and Daniel Steele ("Steele") (collectively, the "Defendants") file this Brief in Opposition to Plaintiff Profit Point Tax Technologies, Inc.'s ("PPTT") Motion to Quash (the "Motion," *see* ECF No. 1). In the Motion, PPTT asks this Court to quash two subpoenas (the "Subpoenas"), in their entirety, that the Defendants issued to the current and former law firms of the lawyer who negotiated, on behalf of PPTT and its sole shareholder, Patrick J. Sweet ("Sweet"), the Master Fee Splitting Agreement and Release of Claims (the "Release," *see* ECF[1] No. 1-1 at 28-32) that is at the heart of the underlying case. Despite putting the subpoenaed documents directly at issue in the First Amended Complaint filed in the underlying case (the "FAC," *see* ECF No. 1-2) by claiming that the Defendants fraudulently omitted information from PPTT in negotiating the Release, PPTT has attempted to prevent the Defendants from obtaining *all* of these highly relevant documents on the grounds that they are protected from disclosure under the attorney-client privilege and the attorney work-product doctrine. The Court should deny the Motion for four reasons.[2]

First, this Court should summarily deny the Motion because PPTT never once met and conferred with the Defendants prior to filing the Motion, in plain violation of Rules 26 and 37, as interpreted by the Seventh Circuit and this Court. Not only did PPTT fail to meet and confer with the Defendants, but instead, at one of PPTT's prior subpoenaed law firms' request, the Defendants granted two extensions of time, most recently until May 29, 2020, to that law firm to respond to the Subpoena after PPTT filed an identical motion in the Western District of Pennsylvania (for

---

[1] Citations to "ECF" refer to documents filed in this matter in this Court, where citations to "W.D. Pa. ECF" refer to documents filed in the underlying case in the United States District Court for the Western District of Pennsylvania (the "Western District of Pennsylvania"). The Defendants cite to the W.D. Pa. ECF in order to avoid overburdening the Court with numerous filings from the underlying case, but will of course provide them upon the Court's request.
[2] On May 29, 2020, Non-Party von Briesen & Roper, s.c. ("von Briesen") filed a Motion to Join PPTT's Motion to Quash, which says nothing of substance beyond what is contained in PPTT's Motion to Quash. *See* ECF No. 3. This Brief in Opposition to PPTT's Motion to Quash is also filed in opposition to von Briesen's Motion to Join.

which PPTT also failed to meet and confer).  After the Defendants opposed that failed motion, PPTT withdrew it, and using the *same* subpoenaed law firm who requested the extension, von Briesen, re-filed that failed Motion in this Court on May 26, 2020.  Notwithstanding the Defendants' attempts to work in good faith with the subpoenaed law firms to obtain highly probative documents to defend against PPTT's claims, PPTT has engaged in procedural maneuvering in a transparent effort to deprive the Defendants of these highly probative and likely exculpatory documents.  The Court should reject PPTT's tactics and summarily deny the Motion.

Second, under Rule 45(e)(2), a person withholding subpoenaed documents under a claim of privilege or as protected trial-preparation material must describe the documents with a certain level of specificity that will allow the parties to assess the claims.  PPTT has failed to describe any of the documents contained within the subpoenaed law firms' files—despite PPTT obtaining a full copy—in any meaningful manner besides reciting the legal elements of a privileged communication and factual predicates which give rise to a claim of attorney work-product.  The Seventh Circuit has held that this failure amounts to waiver.  PPTT's careful omission of describing any of the purportedly protected documents within the law firms' files is confirmed by the fact that PPTT describes the Subpoenas as requesting "*potentially* privileged communications and/or work product," suggesting that neither PPTT nor the law firms reviewed the documents before PPTT filed the Motion.  *See* ECF No. 2 at 4 (emphasis added); *see also id* at 9 (requesting the Court to quash the Subpoenas "*to the extent*" that any protected information is sought (emphasis added)).  The Court should deny the Motion based on this procedural defect.

Third, even if the Subpoenas do seek documents that would otherwise be protected by the attorney-client privilege or the attorney work-product doctrine, which PPTT has failed to establish, PPTT has waived these protections by claiming that the Defendants fraudulently omitted

information from PPTT during the negotiations of the Release. PPTT's claims in the FAC put PPTT's knowledge base and communications with its lawyer who negotiated the Release on behalf of PPTT and Sweet *directly at issue* in this case. Courts across the country find an implied waiver of the attorney-client privilege and the attorney work-product doctrine where a client affirmatively places otherwise protected information at issue in the case, including fraudulent misrepresentation claims like those PPTT has asserted here. The Court should deny the Motion based on this waiver.

Fourth, the Motion asks this Court to quash the Subpoenas *in their entirety* on the grounds that they seek documents protected by the attorney-client privilege and the attorney work-product doctrine. However, setting aside PPTT's implied waiver, the Subpoenas clearly seek information that is *not* subject to either of these protections. Indeed, the Subpoenas seek, among other non-protected documents: (1) communications between PPTT's lawyer and each of the Defendants, as well as other third parties; (2) drafts of the Release, which would have been exchanged with the Defendants; and (3) documents specifically related to the Exelon project at the heart of this dispute, as well as other projects that are the subject of the Defendants' Counterclaims. PPTT in fact concedes, as it must, that the Subpoenas seek non-protected documents in stating that the Subpoenas "seek, *at least in part*," "*potentially* privileged communications and/or work product." *See* ECF No. 2 at 4 (emphasis added). Yet, inexplicably, PPTT nonetheless asks this Court to quash the subpoenas in their entirety. Where non-protected documents are clearly sought in the Subpoenas, the Court should not quash the Subpoenas in their entirety as PPTT requests.

## BACKGROUND

In the FAC, PPTT alleges that Manning and Steele worked as independent contractors for PPTT, who provides tax services directly to clients and as a subcontractor for other entities. *See* FAC ¶¶ 7-8. PPTT alleges that Manning and Steele were paid pursuant to unidentified terms of an oral Revenue Sharing Agreement (the "Agreement"). *Id.* ¶¶ 9-11. PPTT alleges that Manning

and Steele solicited Exelon using PPTT's resources in 2014; however, Manning used a DPAD engagement letter to secure Exelon as a client for DPAD, which Manning and Steele formed in 2015.  *Id.* ¶¶ 15-16, 19.  PPTT, Sweet, Manning, Steele, and DPAD entered into the Release on February 2, 2016 to resolve "all remaining fee splitting disputes between them[.]"  *Id.* ¶ 21; *see also* ECF No. 1-1 at 28-32.  PPTT alleges that Manning and Steele did not disclose to, and intentionally withheld from, PPTT (directly or to its lawyers, von Briesen, who represented PPTT in the Release negotiations) that Exelon agreed to pay PPTT for tax services, and PPTT allegedly learned of this only *after* the Release was executed.  *See* FAC ¶¶ 22-25.  PPTT alleges that the Defendants completed tax services for Exelon but have not paid PPTT for those services.  *Id.* ¶ 26.

The Defendants possess some evidence demonstrating that PPTT absolutely knew of the Exelon project prior to entering into the Release, which relates directly to their communications with at least one of von Briesen's lawyers.  *See* W.D. Pa. ECF No. 52-8.  The Defendants issued the Subpoenas to obtain further relevant evidence relating to the negotiation of the Release and what PPTT knew during the negotiations.  PPTT has put these communications—including those it had directly with its lawyers who were negotiating the Release on its behalf—directly at issue in this case by claiming that it did *not* know of the Exelon project prior to entering into the Release. *See* FAC ¶¶ 22-25.  Despite PPTT putting these communications with von Briesen directly at issue in the FAC, in both its Rule 26(a) Initial Disclosures and in response to an interrogatory propounded by the Defendants requesting the identity of any persons possessing documents, communications, knowledge, or information relevant to its claims, PPTT concealed the identity of von Briesen, including any of its current or former lawyers, and the existence of von Briesen's file specifically related to the negotiation of the Release.

On April 24, 2020, the Defendants served the Subpoenas on the current and former law firms of one of the lawyers believed to have negotiated the Release on behalf of PPTT and Sweet, Ronald M. Trachtenberg, Esquire: Fuhrman & Dodge, S.C. ("Fuhrman & Dodge") and von Briesen, respectively. *See* ECF No. 1-1. In 2015, von Briesen was engaged by PPTT and Sweet in connection with the dispute that led to the negotiation and execution of the Release. *See* ECF No. 2 at 3. Mr. Trachtenberg practiced with von Briesen during this time frame, and ultimately joined Fuhrman & Dodge in 2019. *Id.* at 3-4. While PPTT claims that Mr. Trachtenberg communicated with PPTT and Sweet, *id.*, Mr. Trachtenberg also communicated directly with the Defendants, including communications on which Sweet was copied, *see* W.D. Pa. ECF No. 52-8.

The Subpoenas are substantively the same and seek information bearing directly on matters PPTT put directly at issue in the FAC, *see* ECF No. 1-1, as well as documents related to the subject matter of the Defendants' Counterclaims, *see* W.D. Pa. ECF No. 25 at 8-19. The Subpoenas contain eleven (11) narrowly tailored requests for production of documents, seeking documents and communications relating to: (1) the Agreement and the Release, including drafts of the Release and communications relating to companies, firms, individuals, or projects during the negotiation of the Release (RFP Nos. 1-3, and 9); (2) the Exelon project (RFP No. 4); (3) the Hershey 2012, 2013, and 2014 Projects, the Rockwater Energy Project, and the Zimmer 2013 Project (including communications with related third parties), all of which relate to the Defendants' Counterclaims (RFP Nos. 5-8, and 11); and (4) Sweet's access to PPTT's electronically stored data, including communications, during the negotiation of the Release (RFP No. 10). *See* ECF No. 1-1.

Fuhrman & Dodge and von Briesen both voluntarily accepted service of the Subpoenas.[3] Counsel for von Briesen informed counsel for the Defendants that after receiving notice of the Defendants' intent to serve the Subpoenas, von Briesen provided PPTT a copy of its file. Counsel for von Briesen informed counsel for the Defendants that it retained a copy of its file; that its file contains non-privileged documents; and that it had begun reviewing its file for responsiveness to the Subpoena. Counsel for the Defendants first granted von Briesen an extension of time until May 22, 2020 to respond to the Subpoena. On May 14, 2020, PPTT filed a motion to quash the Subpoenas and a supporting brief in the Western District of Pennsylvania nearly identical to those presently before this Court. *Compare* W.D. Pa. ECF Nos. 59 and 60 *with* ECF Nos. 1 and 2.

After PPTT filed the motion and supporting brief in that court, von Briesen requested another extension of time until May 29, 2020 to respond to the Subpoena. On May 20, 2020, the Defendants filed their opposition to the motion to quash the Subpoenas in the Western District of Pennsylvania, *see* W.D. Pa. ECF No. 66, and, the following day, without being informed that von Briesen would be representing PPTT in connection with the Motion, granted von Briesen an extension until May 29, 2020 to respond. Counsel for the Defendants, however, expressed to von Briesen the importance of receiving documents responsive to the Subpoena on May 29, 2020 due to a mediation mandated by the Western District of Pennsylvania currently scheduled for June 11, 2020. On May 26, 2020, PPTT, *now represented by* von Briesen, filed the instant Motion without once mentioning it to the Defendants or conferring with them on how this dispute could have been avoided. On the same day, PPTT moved to withdraw the motion in the Western District of Pennsylvania, claiming that it "inadvertently failed to note the location for compliance" in the

---

[3] However, inexplicably, since taking on the representation of PPTT for purposes of this Motion, von Briesen will not voluntary accept service of a separate Subpoena for Deposition that has been issued on the firm, forcing the Defendants to incur the additional expense of personal service on von Briesen.

Subpoenas (Madison) and "erroneously filed" the motion to quash in the Western District of Pennsylvania. *See* W.D. Pa. ECF No. 67. "PPTT regrets the error." *Id.*

## LEGAL STANDARD

Rule 45(d)(3) requires district courts to, upon motion, quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; and (4) subjects a person to undue burden. *See In re NeJame Law, P.A.*, No. 16-cv-4619, 2016 WL 3125055, at *2 (N.D. Ill. June 3, 2016). The party seeking to quash a subpoena bears the burden of demonstrating that the requirements of Rule 45(d)(3) are met. *See Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 196 (N.D. Ill. 2013). "A subpoena will survive a motion to quash when it designates topics that are reasonably calculated to lead to admissible evidence." *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007) (citing Advisory Committee Note to the 1970 Amendment to Rule 45(d); 9A Wright, Miller & Cooper, Federal Practice and Procedure § 2459, at 44-45 (2d ed. 1994)). Whether to quash a subpoena is within the district court's discretion. *See Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1081 (7th Cir. 2016).

## ARGUMENT

I.  **PPTT DID NOT MEET IN CONFER WITH THE DEFENDANTS IN GOOD FAITH PRIOR TO FILING THE MOTION BUT RATHER, THROUGH ITS CURRENT COUNSEL VON BRIESEN, MISLED THE DEFENDANTS PRIOR TO FILING IT.**

PPTT never met and conferred with the Defendants prior to filing the Motion, either through counsel in the underlying case or von Briesen, and instead chose to file the Motion and double down on its failed attempt to quash the Subpoenas in the Western District of Pennsylvania. In fact, after PPTT filed its motion in the Western District of Pennsylvania, von Briesen requested a *second* extension until May 29, 2020. Attempting to work in good faith, the Defendants agreed,

only to have the rugged pulled out from under them when von Briesen, on behalf of PPTT, filed the Motion on May 26, 2020. This Court should not tolerate PPTT's procedural maneuvering, especially when the Western District of Pennsylvania has mandated that the parties conduct an early mediation, which is scheduled for June 11, 2020.

"Parties are expected to meet and confer at least once to resolve their discovery disputes before requesting help from the court." *Smith v. OSF HelathCare System*, 933 F.3d 859, 870 (7th Cir. 2019) (citing Fed. R. Civ. P. 37(a)(1)). Indeed, this Court routinely denies discovery motions and admonishes parties for failing to meet and confer in good faith. *See Barlass v. City of Janesville*, 10-cv-454-SLC, 2011 WL 13187131, at *1 n. 2 (W.D. Wis. Nov. 28, 2011) (denying motion where party "failed to aver that she attempted to meet and confer with defendants before filing her motions, as required by this court's discovery procedures."); *Oswald v. Pollard*, 15-cv-291-WMC, 2018 WL 582602, at *4 (W.D. Wis. Jan. 26, 2018) (reminding party of its obligation under Rule 37(a)(1) to meet and confer in a good faith attempt to resolve discovery disputes informally and advising that it would deny future motions without setting forth such effort); *Gabel v. MillerCoors*, 14-cv-489-JDP, 2015 WL 12745596, at *2 (W.D. Wis. Oct. 16, 2015) (same); *Schreiber Foods, Inc. v. Indirect Purchaser Plaintiffs*, No. 12-MC-00050, 2012 WL 3301027, at *1 (E.D. Wis. Aug. 13, 2012) (suggesting that party moving to quash a subpoena issued by another party to a non-party is subject to a meet and confer requirement under Rule 26(c)(1)).

In this case, counsel for PPTT, who is now also counsel for von Briesen who recently filed its own motion to quash, *see* ECF No. 3, never met and conferred with the Defendants regarding the Motion. It is also worth noting, PPTT's failure to confer with counsel before running to court is habitual, as it never met and conferred with the Defendants prior to filing the identical motion in the Western District of Pennsylvania. PPTT never met and conferred prior to filing the motion

to withdraw the motion in the Western District of Pennsylvania and filing the Motion in this Court. Rather than conferring with Defendants' counsel prior to filing the Motion, von Briesen, PPTT's counsel in this Court, requested two extensions of time to respond to the Subpoena. PPTT's procedural maneuvering is an apparent attempt to deny the Defendants the extremely probative and likely exculpatory documents contained in von Briesen's file, not only before the impending mediation but also in the underlying case in general. The Court should not tolerate this obstructionist conduct and should summarily deny the Motion.

**II.   PPTT DOES NOT SATISFY ITS OBLIGATION TO SPECIFY THE PURPORTEDLY PROTECTED DOCUMENTS IN THE MOTION AND HAS THEREFORE WAIVED ANY CLAIMS OF PROTECTION.**

PPTT has not described the purportedly protected documents with the specificity necessary for the Defendants and this Court to evaluate the claims of attorney-client privilege and attorney work-product doctrine and has therefore waived these protections. Under Rule 45(e)(2), a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (1) expressly make the claim; and (2) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. *See also Sambrooks v. Choiseme*, Cause No. 2:12-cv-102, 2014 WL 4449914, at *2 (N.D. Ind. Sept. 10, 2014). "The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). A "blanket claim of privilege" "is insufficient to deny production." *SPS Technologies, LLC v. Boeing Co.*, Case No. 19 C 3365, 2019 WL 2409601, at *8 (N.D. Ill. June 7, 2019). Indeed, "[w]ithout a privilege log, neither [the subpoenaing party] nor the Court can assess [the resisting party's] claim of privilege." *Id.* In *Ott*

*v. City of Milwaukee*, 682 F.2d 552, 558 (7th Cir. 2012), the Seventh Circuit held that subpoenaed parties who did "not offer[] any reason for failing to spell out all of their objections in their initial or amended motion to quash" waived the attorney-client privilege. *See also Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *6 (N.D. Ill. Jan. 3, 2017) (holding that failure to timely produce a privilege log or object with specificity to a subpoena resulted in the waiver of the attorney-client privilege); *Mosely v. City of Chicago*, 252 F.RD. 421, 426 (N.D. Ill. 2008) ("By failing to comply with Rule 45, the Respondents have waived whatever claim of privilege they might have had in the tapes and interview notes." (collecting cases)).

In this case, the Motion is devoid of any specificity or description of the protected documents that would enable the Defendants and the Court to assess the claims. The Motion merely contains two perfunctory attempts to describe the documents at issue that do nothing more than recite the elements of a privileged communication and protected attorney work-product: (1) "Trachtenberg communicated directly and exclusively with PPTT and Sweet, as PPTT's principal. These communications were made for the purpose of obtaining legal advice and, as such, are protected by the attorney-client privilege[,]" *see* ECF No. 2 at 7-8; and (2) "[the Subpoenas] seek documents and communications created in the context of a dispute and separation between PPTT and Manning/Steele and therefore constitute work product because they are 'materials obtained or prepared by an adversary's counsel with an eye toward litigation[,]'" *id.* at 8 (quoting, *e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)). These generic descriptions do not satisfy Rule 45(e)(2) and wholly fail to enable the Defendants and the Court to assess PPTT's claims of attorney-client privilege and attorney work-product protection. The Court should deny the Motion based on PPTT's failure to comply with Rule 45 and find that PPTT has waived any claims under the attorney-client privilege and the attorney work-product doctrine.

### III. PPTT WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK-PRODUCT DOCTRINE BY PUTTING ITS KNOWLEDGE OF ITS ATTORNEY'S NEGOTIATION OF THE RELEASE AT ISSUE IN THE FAC.

By claiming that the Defendants fraudulently omitted information from PPTT in negotiating the Release with Mr. Trachtenberg, PPTT has put directly at issue attorney-client communications and attorney-work product and has therefore waived the protections they are typically afforded.  "The attorney-client privilege is generally waived when the client asserts claims or defenses that put the client's attorney's advice at issue in the litigation."  *Giddings v. Principal Fin. Grp., Inc.*, No. 07-CV-370, 2008 WL 2002652, at *2 (E.D. Wis. May 6, 2008) (citing *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995)).  The Seventh Circuit has held that a party can waive the attorney-client privilege by voluntarily injecting a new factual or legal issue into the case.  *See Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987).  Indeed, the protections afforded by the attorney-client privilege and the attorney work-product doctrine cannot be used as "both a shield and a sword" and "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications."  *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2015 WL 5123652, at *4 (N.D. Ill. Sept. 1, 2015); *Carson v. Lake County*, Cause No. 2:14-CV-117-PRC, 2016 WL 1567253, at *5 (N.D. Ind. Apr. 19, 2016) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also State v. Hydrite Chemical Co.*, 220 Wis. 2d 51, 582 N.W.2d 411 (Ct. App. 1998) (recognizing "at-issue" doctrine as a basis for implied waiver of both attorney-client privilege and attorney work-product under Wisconsin law).

*Synalloy Corp. v. Gray*, 142 F.R.D. 266, 269-70 (D. Del. 1992), is directly on point.  There, the court relied on the Seventh Circuit's decision in *Lorenz* and cases from across the country to find that, exactly as PPTT has done in the FAC, a party asserting a fraudulent misrepresentation

claim waived the attorney-client privilege because the claim put directly at issue the party's knowledge regarding an agreement negotiated by its attorneys:

> Chariot Group, through its own affirmative action, injected the issue of fraudulent misrepresentation into the suit when it filed its amended counterclaim. Accordingly, Chariot Group waived its right to prevent disclosure of communications which might have proven Chariot Group did not rely on Synalloy's statements or that such reliance was unreasonable. Additionally, by claiming "rescission" of the Agreement due to "no meeting of the minds," Chariot Group waived its right to prevent disclosure of communications which might show the parties intent in entering the Agreements.
>
> One result of asserting the privilege has been to deprive Synalloy of the information necessary to "defend" against the counterclaim. In this case, it was the attorneys who negotiated the Agreement. Because Chariot Group raised the issues of its lack of understanding of the Agreement and fraudulent misrepresentation, in circumstances in which perhaps the only people who would have explained the agreement to it were its attorneys, the Chariot Group's assertion in the counterclaim was an implicit waiver of the privilege.

*Synalloy*, 142 F.R.D. at 269-70 (citing *Lorenz*, 815 F.2d at 1098; *Hearn v. Rhay*, 68 F.R.D. 574, 581-82 (E.D. Wash. 1975); *Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989); *Sedco Int'l SA v. Cory*, 637 F.2d 1201, 1201-06 (8th Cir. 1982), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 444 (S.D. Fla. 1980); Scott N. Stone & Ronald S. Liebman, Testimonial Privileges § 1.50 at 72 n. 440 (Supp. 1991)).

One of the cases on which *Synalloy* relied is equally compelling. In *Sedco*, the plaintiff brought suit against a defendant seeking final payment for use of its equipment and services. *See* 637 F.2d at 1201-06. The defendant counterclaimed, maintaining that through fraudulent misrepresentations the plaintiff induced the defendant to enter into a venture to produce oil off the coast of Qatar. *Id.* The Eighth Circuit concluded that the defendant's fraud claim waived the defendant's right to assert the attorney-client privilege "to prevent disclosure of communications which might have proven [the defendant] did not rely on [the plaintiff's] employee's statements or that such reliance was unreasonable." *Id.* at 1206.

In this case, PPTT alleges that "Manning and Steele did not advise PPTT" that it substituted a DPAD engagement letter in the place of a PPTT engagement letter in procuring the Exelon project and, therefore, "PPTT had no knowledge that Exelon had executed a DPAD Group engagement letter rather than a PPTT engagement letter." *See* FAC ¶¶ 19-20.  PPTT alleges that "a dispute arose between PPTT on the one hand, and Manning and Steele on the other hand relating to the Agreement."  *Id.* ¶ 21.  In order to resolve this dispute, PPTT, Sweet, and the Defendants entered into the Release, which Mr. Trachtenberg, while at von Briesen, negotiated on behalf of PPTT and Sweet.  *Id.* ¶ 21; ECF No. 2 at 3.  Critically, PPTT alleges that "at that time, Manning nor Steele had advised PPTT that Exelon had agreed to pay PPTT for tax services and that PPTT would therefore be entitled to collect a fee on the project."  *See* FAC ¶ 22-23.  PPTT claims that it "did not learn of the existence of the Exelon project until after the signing of the [Release]."  *Id.* ¶ 24.  Based on these allegations, PPTT asserts a fraudulent misrepresentation claim seeking to invalidate the Release, and, in turn, breach of contract and a host of tort claims.  *See generally id.*

Clearly, "through its own affirmative action," PPTT has "injected the issue of fraudulent misrepresentation into the suit when it filed the [FAC]."  *See Synalloy*, 142 F.R.D. at 269-70; *see also Lorenz*, 815 F.2d at 1098.  "Accordingly, [PPTT] waived its right to prevent disclosure of communications which might have proven" PPTT knew of the Exelon project or cannot otherwise meet the elements of its fraudulent misrepresentation claim.  *See Synalloy*, 142 F.R.D. at 269-70. "Because [PPTT] raised the issues of . . . fraudulent misrepresentation, in circumstances in which perhaps the only people who would have explained the [Release] to it were its attorneys, [PPTT's] assertion in the [FAC] was an implicit waiver of the privilege."  *Id.*  Indeed, at least one communication between Manning and Mr. Trachtenberg, on which Sweet is copied, explicitly references the Exelon project.  *See* W.D. Pa. ECF No. 52-8.  By claiming the Defendants

fraudulently omitted information from PPTT in negotiating the Release, which Mr. Trachtenberg negotiated on behalf of PPTT and Sweet, PPTT has waived its protection under the attorney-client privilege and the attorney work-product doctrine.  For the Court to grant the Motion would arm PPTT with both "a shield and a sword" while denying the Defendants fair examination of the documents and communications necessary to defend themselves.  The Motion must be denied and PPTT found to have waived the attorney-client privilege and attorney work-product protection with respect to the documents and communications responsive to the Subpoenas.

**IV.   THE SUBPOENAS SEEK DOCUMENTS THAT ARE *NOT* PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE OR THE ATTORNEY WORK-PRODUCT DOCTRINE, AND ONE SUBPOENAED LAW FIRM HAS CONFIRMED THIS.**

Even assuming any of the documents requested in the Subpoenas are protected, which the Defendants dispute above, the Court would not be permitted quash the Subpoenas, as PPTT requests, because they clearly seek non-protected documents, as PPTT concedes.  Courts in the Seventh Circuit have declined to quash an entire subpoena on a sweeping claim of privilege.  *See Wi-LAN, Inc. v. LG Electronics, Inc.*, No. 10 CV 7721, 2011 WL 148058, at *4 (N.D. Ill. Jan 18, 2011) ("I decline to quash the entire subpoena on such a sweeping claim of privilege.  Rather than grant the in camera showing, the better approach is to allow CFIR/Perri to simply assert their privileges document-by-document in the production and question-by-question in the deposition."); *see also U.S. Bank Nat'l Assoc. v. Londrigan, Potter & Randle, P.C.*, Case No. 15-3195, 2017 WL 9620399, at *1-*5 (C.D. Ill. Aug. 24, 2017) (denying motions to quash subpoenas in their entirety issued to non-party law firms where the law firms could withhold or redact protected information while still producing the requested documents); *Iantosca v. Benistar Admin. Servs., Inc.*, No. 1:11-mc-0066-RLY-DML, 2011 WL 3155649, at *5 (S.D. Ind. July 26, 2011) ("Other than asking the court to quash the Subpoena in its entirety, the movants have offered no alternative scope to the

Subpoena's time frame or list of entities. They have not made a sufficient demonstration that the Subpoena overreaches" on these issues (collecting cases)).

In this case, the Defendants have subpoenaed documents which are clearly not protected from disclosure under either the attorney-client privilege or the attorney work-product doctrine. PPTT concedes this, stating that the Subpoenas "seek, *at least in part*" . . . "potentially privileged communications and/or work product." *See* ECF No. 2 at 4 (emphasis added). For instance, the Subpoenas seek documents and communications, including with the Defendants and third parties, relating to the Agreement, the Release, the individuals, entities, and projects discussed during negotiations of the Release, projects for which the Defendants believe they are owed under the Release and the Agreement, and Sweet's access to information during the negotiation of the Release. Clearly, these categories, on their face, implicate non-protected information, and PPTT's attempt to unilaterally deem every document protected simply because they are possessed by law firms is off base and imprecise. Even counsel for von Briesen indicated to counsel for the Defendants that von Briesen's file contains non-protected documents. Because the Subpoenas seek non-protected documents, the Court should not quash them.[4]

---

[4] PPTT also claims that the Subpoenas seek documents not relevant to this dispute and from third-parties despite the Defendants seeking this same information from PPTT. *See* ECF No. 2 at 8-9. The documents sought that PPTT claims are not relevant to this case—documents relating to companies, firms, individuals, or projects that were the subject of communications during the negotiation of the Release (RFP No. 9), and documents relating to Sweet's access to PPTT's electronically stored data, including communications, during the negotiations of the Release (RFP No. 10), *id.*; ECF No. 1-1—are absolutely relevant to PPTT's claim that the Defendants fraudulently omitted information from PPTT during the negotiation of the Release, *see* FAC ¶¶ 22-25. Moreover, PPTT has not produced a *single* document to the Defendants in this case, thus underscoring why nothing prohibits the Defendants from seeking similar categories of documents from a direct source in order to ensure that they receive all responsive documents. *See Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, Case No. 1:15-mc-00103-TWP-DML, 2016 WL 1627599, at *3 (S.D. Ind. Apr. 19, 2016) (rejecting claim that subpoena was duplicative and cumulative, holding that subpoenaing party was "entitled to get information from the most reliable source possible—the original source.").

## CONCLUSION

The Court should deny the Motion in its entirety and further order that PPTT has waived its attorney-client privilege and attorney work-product with respect to the documents responsive to the Subpoenas. A proposed Order is attached.

Dated: May 29, 2020							**REED SMITH LLP**

							<u>*/s/ Alex G. Mahfood*</u>
							Alex G. Mahfood
							State Bar No. 1089130
							Brad A. Funari
							(*pro hac vice* forthcoming)
							225 Fifth Avenue
							Pittsburgh, PA 15222
							(412) 288-3131

							*Counsel for Defendants*
							*DPAD Group, LLP, John Manning,*
							*and Daniel Steele*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/ Alex G. Mahfood*