IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| PROFIT POINT TAX TECHNOLOGIES, INC., | OPINION AND ORDER |
| Plaintiff/Counter-Defendant | |
| v. | 20-mc-0009 |
| DPAD GROUP, LLP, JOHN MANNING, and DANIEL STEELE, | Pending in the United States District Court for the Western District of Pennsylvania |
| Defendants/Counter-Plaintiffs. | Case No. 2:19-cv-00698-WSS-MPK |

---

This case involves a business dispute pending in the United States District Court for the Western District of Pennsylvania, Case No. 2:19-cv-698-WSS-MPK. Plaintiff Profit Point Tax Technologies, Inc. ("PPTT"), joined by the law firm of von Briesen & Roper, S.C., move to quash a subpoena for production of documents that defendants served on von Briesen. von Briesen represented PPTT in fee dispute negotiations that preceded but relate to the Pennsylvania lawsuit. PPTT and von Briesen object on the ground that the subpoena seeks documents protected by the attorney-client and attorney work product privileges.[1] Dkts. 1, 3.

As discussed below, the motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Profit Point Tax Technologies, Inc., is a Wisconsin corporation in the business of providing specialized tax services to clients. Its sole shareholder is Patrick Sweet. Defendants

---

[1] PPTT also moves to quash a duplicate subpoena served on Fuhrman & Dodge S.C., asserting that the Fuhrman firm has not represented PPTT on the matters relevant to this case. Fuhrman has not filed a motion to quash or joined in PPTT's motion, most likely because it does not have any documents responsive to the subpoena. Accordingly, this order concerns only the subpoena served on von Briesen.

John Manning and Daniel Steele were independent contractors who provided tax services for PPTT clients as well as for clients of other entities for which PPTT was a subcontractor. As independent contractors, Manning and Steele each had use of a PPTT email address, PPTT's server, and other PPTT resources, and were able to market to potential clients under PPTT's name. Manning and Steele were paid for their work on PPTT projects pursuant to a revenue sharing agreement between the parties.

In the First Amended Complaint, PPTT alleges that in May 2015, without PPTT's knowledge, Manning and Steele formed defendant DPAD Group, a tax services company that competes directly with PPTT in the tax services market. A few months before forming DPAD group, Manning solicited a client, Exelon, using PPTT's confidential information as well as its name, good will, and reputation. PPTT alleges that, after securing Exelon's business, Manning substituted a DPAD Group engagement letter in place of a PPTT engagement letter, without advising PPTT of the substitution.

Meanwhile, a dispute had emerged between Manning and Steele and PPTT over their fee sharing in regards to work performed for other clients. In order to resolve all remaining fee disputes between them, Manning, Steele, and PPTT entered into a separate agreement dated February 2, 2016 (the "Fee Splitting Agreement and Release"). Attorney Ron Trachtenberg, a lawyer with von Briesen & Roper, s.c., represented PPTT in this dispute and negotiated and drafted the terms of the Fee Splitting Agreement.

PPTT alleges that it was not aware when it negotiated the Agreement and Release that DPAD, through Manning, had engaged Exelon, so the Exelon project was omitted from the Fee Splitting Agreement. PPTT alleges that it did not learn of the existence of the Exelon project

until after February 2, 2016, at which time it requested payment from Manning, Steele and DPAD under the terms of the original fee sharing agreement. Manning refused. PPTT believes that in addition to hiding the Exelon project, Manning and Steele "have been engaged in a general scheme to usurp PPTT's profits for their benefit." First Am. Complaint, ¶ 27.

PPTT has asserted the following causes of action against defendants: (1) breach of contract; (2) breach of fiduciary duty; (3) unjust enrichment; (4) tortious interference with contract; (5) conversion; (6) intentional misrepresentation in connection with the Fee Splitting Agreement; and (7) negligent misrepresentation in connection with the Fee Splitting Agreement. More specifically, with respect to Count 6, PPTT alleges that defendants made "false or misleading representations" regarding the "client projects that would be subject to the [Release]" in order to "induce PPTT to sign the [Release] without any compensation relating to the omitted clients." *Id*. ¶¶ 52-57.

## II.  MOTION TO QUASH

On or about April 24, 2020, defendants served a Rule 45 subpoena on von Briesen, seeking "all Documents and Communications" relating to the Fee Splitting Agreement and Release, as well as related to specific, named projects, including: (1) communications between the firm and its client, PPTT/Sweet; and (2) all drafts of the document. Dkt. 1-1.

PPTT, joined by von Briesen, moved under Rule 45 to quash the subpoenas "to the extent they seek privileged communications and/or work product exchanged between

3

PPTT/Sweet and its counsel;" they did not, however, produce a privilege log.[2] Dkt. 1-4. In response, respondents argued that PPTT had implicitly waived any attorney-client or work product privilege by asserting a fraudulent misrepresentation claim in the First Amended Complaint, and further, that quashing the entire subpoena was not warranted on the ground that "some" documents sought might be privileged, particularly when movants had not supported their claims of privilege with a log. On June 12, 2020, the court held a telephonic hearing on the motion, at the conclusion of which it ordered movants to: (1) produce to respondents responsive documents that were not subject to any assertions of attorney-client privilege or attorney work-product protection; and (2) file and provide to respondents a privilege log for the remaining documents, and to submit these documents to the court *ex parte* and *in camera*. Respondents were given until July 16 to respond to movants' claims of privilege. Dkts. 10-12.

Movants submitted their documents to the court for *in camera* review and provided respondents with a privilege log. Responding to the log, respondents noted that some documents were improperly designated because they reflect communications with third parties, a point movants have conceded.[3] *See* Br. in Reply, dkt. 15, at 3. They also challenged the

---

[2] PPTT also argued--perfunctorily--that Subpoena Requests No. 9 and 10 seek marginally relevant information and are unduly burdensome. Br. in Supp., dkt. 2. at 8-9. However, PPTT's motion to quash is directed only to "Communications and/or Documents subject to the attorney-client privilege and/or work product doctrine[.]" Dkt. 2, at 9. Accordingly, absent a more developed argument on these topics, I decline to quash or modify these requests except to the extent they seek privileged documents.

[3] The following documents, identified by the PPTT_Priv_ Bates Number on the privilege log, reflect communications with third parties and must be produced: 117, 785, 1011, 1012, 1013, 1015, 1030, 1151, 1164, 1230, 1232, 1235, 1239, 1265, 1268, 1272, 1277, 1663, 1665, 1667, 1668, 1672, and 1779.

designation of Trachtenberg's drafts of the Fee Splitting Agreement as work product, arguing that the drafts were not prepared in anticipation of litigation. Finally, respondents reiterated their argument that, privileged or not, PPTT put *all* of the subpoenaed documents at issue in the First Amended Complaint by claiming the defendants fraudulently omitted information from PPTT in negotiating the Master Fee Splitting Agreement and Release of Claims.

## ANALYSIS

### I. Attorney-Client Privilege

Under Fed. R. Civ. P. 45(d)(3)(A)(3), the court for the district where compliance is required may grant a motion to quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies. Federal Rule of Evidence 501 governs the applicability of privileges in federal courts. It states:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

When a federal court sits in a diversity action, it must apply the substantive privilege rules of the forum state. Federal Rule of Evidence 501; *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 2005 WL 3690565, *4 (C.D. Ill. Jan. 31, 2005) (where the basis of federal jurisdiction is diversity, the court is to apply the state law of attorney client privilege); *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987) (applying the state law of privilege

to a diversity claim in federal court). Although this is a diversity case, neither party has advised which state's law should apply, instead citing mostly federal cases.[4] As far as the basic elements of the attorney-client privilege are concerned, this omission doesn't really matter, because there is no material difference between federal common law, Wisconsin law, and Pennsylvania law. All jurisdictions agree that the attorney-client privilege shields communications between a client and her lawyer if the client is seeking legal advice and the communications are made in confidence for that purpose and not waived. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 5928; Wis. Stat. § 905.03; *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citing elements of federal common law privilege as summarized by Dean Wigmore).

Applying these elements to the documents submitted by PPTT *in camera*, I find that PPTT properly invoked the attorney-client privilege with respect to the documents so designated on its privilege log (with the exception of the erroneously-designated third-party communications that it has agreed to produce). The email exchanges between PPTT and its attorney reflect confidential communications exchanged for the purpose of securing or providing legal advice, and are thus entitled to protection under the attorney-client privilege.

The remaining question is whether PPTT waived the privilege. Defendants argue that, by alleging that defendants fraudulently withheld information from PPTT about Exelon and possibly other companies while the parties were negotiating the agreement, PPTT has placed its communications with its lawyer during those negotiations "at issue" and thereby waived protections of the privilege. Br. in Opp., dkt. 4, at 4. Defendants cite a number of cases holding

---

[4] In the underlying proceeding in the Western District of Pennsylvania, the parties agreed that the court could apply Pennsylvania law in deciding defendants' motion to dismiss. Rep. and Rec., June 2, 2020, case no. 2:19:-cv-698-WSS-MPL, dkt. 70, at 6 n.2.

or suggesting that the privilege is waived whenever a party asserts a claim or defense that puts its state of mind at issue and the privileged documents are likely to contain information vital to the defense. *See, e.g. Synalloy Corp. v. Gray*, 142 F.R.D. 266, 269-70 (D. Del. 1992) (defendant waived privilege by bringing suit for fraudulent misrepresentation and rescission by putting its state of mind at issue; communications with attorneys who negotiated the agreement were relevant to show the parties' intent, knowledge and reliance in entering the agreements); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (party asserting attorney-client privilege waives privilege by its own affirmative conduct when it puts protected information at issue by "making it relevant to the case" and application of the privilege would deny opposing party access to information "vital to his defense").

However, unlike the near-uniformity that exists with respect to the elements of the attorney-client privilege, not all courts agree with the expansive view of the "at issue" waiver doctrine as espoused in *Synalloy* and *Hearn*. One such court is the Court of Appeals for the Third Circuit. In *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3rd Cir. 1994), a diversity case involving claims arising under Pennsylvania law, the court declared such decisions to be of "dubious validity," insofar as they rested merely on the conclusion that the communications were relevant and should in fairness be disclosed. *Id*. at 864. As the court explained:

> A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality.

*Id*. In the Third Circuit's view, a party puts privileged communications "at issue" only where "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing

or describing an attorney client communication." *Id*. at 863 (citations omitted). Classic examples are where a party files a malpractice action against the lawyer, or where an alleged patent infringer relies on an advice of counsel defense to avoid a finding of willful infringement. *Id*.

Wisconsin and Pennsylvania both follow this approach. In *State v. Hydrite Chem. Co.*, 220 Wis. 2d 51, 68–69, 582 N.W.2d 411, 418 (Ct. App. 1998), a case cited by defendants, the Wisconsin Court of Appeals explicitly rejected *Hearn*'s "expansive" view of the "at issue" doctrine in favor of the more restrictive view expressed in *Rhone-Poulenc*, stating:

> Under the expansive view of the "at issue" doctrine, the attorney-client privilege is waived when the privilege holder places a claim or defense at issue and the document in question has a direct bearing on that claim or defense, regardless of whether the privilege holder intends to use the document to prove the claim or defense. This expansive view is incongruent with § 905.03, Stats., which states that attorney-client communications remain confidential until the privilege holder intends to disclose the communication to third persons.

*Id*. at 69. Similarly, in *Mueller v. Nationwide Mut. Ins. Co.*, 1996 WL 910155, 31 Pa. D. & C.4th 23, 40 (Com. Pl. 1996), the court rejected an assertion of an implied waiver of attorney-client privilege in the context of a bad faith claim that was premised on state-of-mind being at issue, reasoning:

> While [the] plaintiffs suggest that any implied waiver doctrine can be confined to bad faith claims against insurance companies, [the] plaintiffs' justification for this exception to the attorney-client privilege (the *Hearn* justification that a court should not decide a factual issue regarding the state of mind of a party without consideration of all relevant evidence) would justify the loss of the privilege in a wide variety of cases because of the ability of a creative party to make the state of mind of another party an issue in the case.

*Id*. at *10.  The bottom line is that, in Wisconsin and Pennsylvania at least, a party may not obtain an adversary's privileged communications simply because it believes those communications would bear on—or even contradict—its adversary's allegations.

Here, although PPTT has arguably placed its state of mind in connection with the Fee Splitting Agreement and Release at issue by filing its fraudulent misrepresentation claim, there is nothing in the record before the court to suggest that it intends to prove its claim by disclosing its confidential communications with its attorneys.  Unless and until there is evidence of such intent, there is no basis to find that PPTT has waived the protections of the attorney-client privilege.

## II.  Work Product Doctrine

Movants also object to producing all drafts of the Agreement and Release on the ground that the drafts are protected by the work-product doctrine.  The work-product doctrine provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3).  Unlike the attorney-client privilege, federal law governs the work-product doctrine.  The doctrine is intended to protect attorney thought process and mental impressions, as well as to "limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts."  *Sandra T.E. v. S. Berwyn Sch. Dist.*, 600 F.3d 612, 622 (7th Cir. 2010).

The key phrase in the rule is whether the documents were produced "in anticipation of litigation."  The test is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because*

of the prospect of litigation." *Binks Mfg. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983) (quoting 8 Charles Alan Wright & Arthur R. Miller Federal Practice & Procedure, § 2024) (emphasis in original). The party seeking to assert the work product privilege has the burden of proving that "at the very least some articulable claim, likely to lead to litigation, [has] arisen." *Id.* at 1119.

Although movants have not made a robust showing, I am satisfied that the draft documents in Trachtenberg's files, which include drafts of various fee-splitting agreements, were prepared because of the prospect of litigation. The overall record indicates that these documents were prepared because of disputes that would otherwise have been litigated. Moreover, defendants have made no showing that *von Briesen* has waived the work product privilege. *Accord Rhone-Poulenc*, 32 F.3d at 866 (noting work product protection belongs to the professional, not the client). Finally, even if the work product privilege does not apply, defendants have not explained why drafts that Trachtenberg did not share with his client are relevant or would tend to lead to the discovery of admissible evidence. *Id*. ("Work product that was not communicated to the client cannot affect the client's state of mind."). For all these reasons, movants need not produce the documents identified on the privilege log as reflecting attorney work product.

**ORDER**

IT IS ORDERED THAT the motion of Profit Point Tax Technologies, Inc., and joined by von Briesen & Roper, S.C., dkts. 1 and 3, to quash the subpoena issued by defendants on the von Briesen firm is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to the responsive documents identified on movants' privilege log on grounds of attorney privilege and work product, with the exception of those reflecting communications with third parties. The motion to quash is DENIED in all other respects.

Entered this 27th day of August, 2020.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge